

Craig R. Smith
csmith@LALaw.com
direct dial 617-395-7081

May 1, 2014

**VIA EMAIL**

The Honorable Katherine Polk Failla
United States District Court
Southern District of New York
40 Foley Square, Room 2103
New York, NY 10007

> Re:   Pre-Motion Letter Regarding Dispositive Motions
> *Kickstarter, Inc. v. ArtistShare, Inc. and Fan Funded, LLC,*
> 11-cv-6909 (S.D.N.Y.)

Dear Judge Failla:

I represent Defendants Fan Funded, LLC and Artist Share, Inc. ("ArtistShare") in the above-captioned action and am submitting this letter pursuant to Your Honor's Scheduling Order of April 9, 2014 (D.I. 87) and in response to Plaintiff Kickstarter, Inc's ("Kickstarter") letter of April 28.  This letter summarizes Artistshare's positions with respect to the issues raised in Kickstarter's letter.

ArtistShare opposes each of the potential motions for summary judgment suggested by Kickstarter.  Kickstarter provided little or no detail regarding its alleged basis for each motion.  Kickstarter has the burden to come forward with clear and convincing evidence that the '887 Patent is invalid.  "A patent is presumed valid and the party asserting invalidity has the burden of persuasion to show the contrary by clear and convincing evidence."  *Research Corp. Technologies v. Microsoft Corp.*, 627 F. 3d 859, 870 (Fed. Cir. 2010).  As explained below, none of the motions proposed by Kickstarter has any merit.  In fact, **ArtistShare** should be granted summary judgment on each of the legal issues raised in Kickstarter's letter.  There are no material disputes of fact with regard to the issues Kickstarter raises, and Kickstarter's theories of invalidity are incorrect as a matter of law.

ArtistShare respectfully submits that the most efficient way to proceed with this case is to have Kickstarter identify the issues it believes have to be resolved prior to an appeal.  Kickstarter should put forth its arguments so that ArtistShare can fairly meet the evidence that Kickstarter actually plans to use in this case.  None of the grounds that Kickstarter will allege on summary judgment can overcome the presumption of validity for ArtistShare's '887 Patent or constitute clear and convincing evidence.  ArtistShare will demonstrate that no triable issues of fact remain in this case and that summary judgment of validity is appropriate.



The Honorable Katherine Polk Failla
May 1, 2014
Page 2

With respect to the merits of Kickstarter's proposed motions for summary judgment, ArtistShare submits that none of Kickstarter's proposed motions has any merit for at least the following reasons.

**The '887 Patent Is Based on Patentable Subject Matter**

The claims of the '887 Patent are based on patentable subject matter and Kickstarter's proposed motion for invalidity on this basis is without merit.  The claims of the '887 Patent are drawn to *specific* systems and methods for funding and marketing a creative work and are by no means abstract.  For example, the claims of the '887 Patent incorporate particularized steps and structures for marketing and funding a creative work including, but not limited to providing a software suite of remotely operable computer programs. The claims also require defining particularized "sales containers" that are offered in return for funds in a project.  Other data structures are defined and stored within an artist-specific database under the claims.  Therefore, the claims of the '887 Patent are particularized and narrowly tailored to a specific, online fan funding platform.

"Congress intended statutory subject matter to 'include anything under the sun that is made by man.'" *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980) (quoting the statutory history).  "[A]s § 101 itself expresses, subject matter eligibility is merely a threshold check; claim patentability ultimately depends on 'the conditions and requirements of this title,' such as novelty, nonobviousness, and adequate disclosure." *Ultramercial, LLC v. Hulu,* LLC, 657 F. 3d 1323, 1326 (Fed. Cir. 2011) (quoting 35 U.S.C. § 101).  The Supreme Court has held that an unpatentable abstract idea must preempt all uses of a fundamental principle, such as a law of nature, abstract idea, or physical phenomena. *See Mayo Collaborative v. Prometheus Labs.*, 132 S. Ct. 1289 (2012).  Here, the claims of the '887 Patent cover particularized online systems and methods for marketing and funding a creative work and in no way preempt the use of the "idea of funding and marketing an artistic work through donations and/or patronage," as Kickstarter puts it.  There are numerous ways one might fund and market an artistic work through donations and patronage without using the invention of the '887 Patent.  Mr. Camelio simply invented *a better way* to fund and market a creative work through a *particularized* system of fan funding.  Kickstarter's proposed motion for summary judgment based on § 101 is a non-issue.

**The Claims of the '887 Patent are Non-Obvious**

In its letter, Kickstarter fails to identify the alleged prior art combination(s) it actually intends to assert in this case. Kickstarter simply *lists* eight alleged prior art references without identifying any specific combinations or potential motivations to combine them and asks the Court to accept that the '887 Patent is obvious based on nothing.  As explained in ArtistShare's letter, Kickstarter should not be permitted to rely upon an expert who has alleged *more than 87*



The Honorable Katherine Polk Failla
May 1, 2014
Page 3

*billion* potential prior art combinations, but does not discuss a single actual combination of references. Kickstarter proposes to assemble these alleged prior art references in an unknown way without ever providing a reason why one of skill in the art would have been motivated to do so in the 2000-2002 timeframe. In any event, none of the *more than 87 billion* potential prior art combinations suggested by Kickstarter discloses the limitations of the claims of the '887 Patent, ArtistShare should be permitted to cross-move for summary judgment in response to whatever prior art combinations Kickstarter intends to present to the Court so that this issue can be determined with finality.

**The Claims of the '887 Patent are Definite**

The claims of the '887 Patent are definite as a matter of law. The claims that Kickstarter refers to in its letter are readily understood even by a lay person. For example, claim 1 of the '887 Patent requires, among other things, "transmitting offer data …, the offer data comprising an offer to *Fans* … , wherein the offer is for a Sales Container at a predetermined level of patronage in exchange for funds for the project..." Claim 4 depends from claim 1 and further requires the "sales container containing at least one entitlement for delivery to *the interested party*." One of ordinary skill in the art, or even a lay person, would understand that the "interested party" would be a fan who accepts the offer. Definiteness is not a genuine issue in this case. *See Halliburton Energy Svs., Inc. v. MI, LLC*, 514 F. 3d 1244, 1249 (Fed. Cir. 2008) (a claim is only indefinite for lack of antecedent basis "where such basis is not otherwise present *by implication* or the meaning is not *reasonably ascertainable*.") (emphasis added).

**The '887 Patent Names the Correct Inventor, Brian Camelio**

Mr. Camelio is the sole inventor of the '887 Patent. None of the alleged "contributions" supposedly made by Mr. Thompson qualifies him as an inventor. First, the documentary evidence unequivocally shows that Mr. Camelio was in prior possession of the ideas that Mr. Thompson allegedly contributed. Based on the documented evidence, it would not have been possible for Mr. Thompson to have contributed that which Mr. Camelio was already well aware. Furthermore, in its own letter, Kickstarter states that "here, adding known features … like an auction … to a known system is entirely predictable." Yet, on the other hand, Kickstarter argues that Mr. Thompson should be named as an inventor because he once mentioned ebay in an email to Mr. Camelio. The Federal Circuit has made clear that such inconsequential conversations do not qualify one as a joint inventor. *See Nartron Corp. v. Schukra USA Inc.*, 558 F. 3d 1352, 1356-57 (Fed. Cir. 2009) ("One who simply provides the inventor with well-known principles or explains the state of the art without ever having a firm and definite idea of the claimed combination as a whole does not qualify as a joint inventor.") (citation omitted). The evidence of record clearly reflects that Mr. Thompson is not an inventor and did not contribute to Mr. Camelio's inventions.



The Honorable Katherine Polk Failla
May 1, 2014
Page 4

Yours truly,

Craig R. Smith

cc:     All counsel of record