UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KICKSTARTER, INC.,

Plaintiff and
Counterclaim-Defendant,

v.

FAN FUNDED, LLC and ARTISTSHARE, INC.,

Defendants and
Counterclaim-Plaintiffs.

Civil Action No. 11-cv-6909 (KPF)

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT, AND IN SUPPORT OF DEFENDANTS'CROSS
MOTION FOR SUMMARY JUDGMENT OF PATENT VALIDITY**

TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................ i

I.       Introduction ........................................................................................................... 1

II.      Argument ............................................................................................................... 2

         A.       ArtistShare Is Entitled To Summary Judgment of Correct Inventorship ................ 2

                  1.       The Presumption of Validity Applies to Inventorship and Kickstarter Has
                           Not Produced Evidence Sufficient to Meet Its Burden of Proof ............... 2

                  2.       Mr. Thompson's Declaration Should be Dispositive ................................. 2

                  3.       Kickstarter Has Not Produced Any Evidence that Mr. Thompson
                           Contributed to the Conception of Claims 1, 8 and 24 ............................... 3

                  4.       Kickstarter Cannot Overcome Mr. Camelio's Evidence of Prior
                           Conception with Respect to Claims 7, 13, and 14 ..................................... 5

                  5.       Claim 17 (Managing/Viewing Financial and Marketing Information) ....... 6

                  6.       Correction of Inventorship Is Unnecessary, But Would Be Allowable ..... 7

         B.       ArtistShare Is Entitled To Summary Judgment That The '887 Patent Claims
                  Patentable Subject Matter ......................................................................................... 7

                  1.       Kickstarter Failed to Produce Clear and Convincing Evidence of
                           Unpatentable Subject Matter ..................................................................... 7

                  2.       Kickstarter's Theory of Ineligibility Fails Under Step 1 of *Alice Corp.* .... 8

                           a.       Kickstarter Ignores the Concrete Limitations of the Claims and
                                    Improperly Assumes They Embrace an Abstract Concept ............. 9

                           b.       Kickstarter *Assumes* the Claims Describe Abstract Subject Matter
                                    in Clear Violation of Supreme Court Precedent .......................... 10

                  3.       Kickstarter's Argument Also Fails Under Step 2 of *Alice Corp.* ............. 11

                           a.       The Individual Elements of the Asserted Claims Represent
                                    Technological Advances Over the Prior Art ................................ 12

                           b.       The Asserted Claims of the '887 Patent, As a Whole, are
                                    Patentable ................................................................................... 13

                           c.       Kickstarter Misapplies Step 2 Under *Alice Corp.* ....................... 14

                  4.       Kickstarter's Pre-*Alice Corp.* Federal Circuit Cases are Inapposite ......... 16

         C.       ArtistShare Is Entitled To Summary Judgment of Non-Obviousness ................... 17

                  1.       Kickstarter's Theory of Obvious is Based on Impermissible Hindsight .. 17

                           a.       Kickstarter Has Not Provided any Motivation to Combine .......... 18

                           b.       Kickstarter's Alleged Prior Art Does Not Disclose the Limitations

of the Claims the '887 Patent ........................................................ 19

        i.    "A system for marketing and funding one or more projects of an artist comprising a server having application programs operable from a remote site for:…" .................. 19

        ii.   "a server having application programs operable from a remote site for … providing software tools to an artist or Account Manager to manage at least one project" ........... 21

        iii.  "application programs operable from a remote site for … receiving information from the artist … regarding at least one Sales Container … including … a product, a service, and a patronage while the artist retains outright ownership…" .................. 22

        iv.  "application programs operable from a remote site for … providing … software tools to manage communications, through said Patron database…" ........................................ 23

    c.    Kickstarter Has Failed to Come Forward With Any Evidence of Obviousness Relating to the Dependent Claims .......................... 24

    d.    Kickstarter Failed to Address Secondary Considerations that the Claims of the '887 Patent Are Non-Obvious ................................ 24

D.    Claims 4, 6, And 10 Are Definite ........................................................................ 25

TABLE OF AUTHORITIES

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l.*, 134 S.Ct. 2347 (2014) ........................................... *passim*

*Applied Innovation, Inc. v. Comm. Recovery Corp.*, No. 11-cv-00330, 2013 WL 4214319 (E.D. Wash. August 14, 2013) ........................................................................................................ 8

*Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336 (1961) ..................................... 8

*Bettcher Indus., Inc. v. Bunzl USA, Inc.*, 661 F.3d 629 (Fed. Cir. 2012)................................ 21, 22

*Bilski v. Kappos*, 130 S. Ct. 3218 (2010) ......................................................................... 11, 15, 16

*Checkpoint Sys., Inc. v. All–Tag Sec. S.A.*, 412 F.3d 1331 (Fed. Cir. 2005) ......................... 20, 21

*CLS Bank, Intern. v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269 (Fed. Cir. 2013) (*en banc*) (*per curium*), *aff'd* 134 S.Ct. 2347 (2014) ........................................................................................ 8

*Diamond v. Diehr*, 450 U.S. 175 (1981) ........................................................................... 8, 10, 14

*Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456 (Fed. Cir. 1998)........................................... 4

*General Elec. Co. v. Wilkins*, 750 F.3d 1324 (Fed. Cir. 2014) ....................................................... 2

*Gottschalk v. Benson*, 409 U.S. 63 (1972) ..................................................................................... 8

*Hess v. Advanced Cardiovascular Sys., Inc.*, 106 F.3d 976 (Fed. Cir. 1997)................................. 6

*In re Alappat*, 33 F.3d 1526 (Fed. Cir. 1994) (*en banc*) ............................................................. 16

*In re Bennett*, 766 F.2d 524 (Fed. Cir. 1985)................................................................................. 7

*In re Cyclobenzaprine Hydrochloride*, 676 F. 3d 1063 (Fed. Cir. 2012) ..................................... 17

*KSR Intern. Co. v. Teleflex Inc.*, 127 S. Ct. 1727 (2007)............................................................. 17

*K-TEC, Inc. v. Vita-Mix Corp.*, 696 F.3d 1364 (Fed. Cir. 2012)................................................. 20

*Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311 (Fed. Cir. 2004)............................... 5

*Magnetar Techs. v. Six Flags Theme Parks*, No. 07-cv-127, 2014 WL 547712 (D. Del. Feb. 7, 2014)................................................................................................................................................ 3

*Microsoft Corp. v. i4i Ltd. Partnership*, 131 S.Ct. 2238 (2011).................................................... 8

*Mintz v. Dietz & Watson*, 679 F.3d 1372 (Fed. Cir. 2012) ......................................................... 19

*Plantronics, Inc. v. Aliph, Inc.*, 724 F. 3d 1343 (Fed. Cir. 2013) ........................................... 18, 19

*Research Corp. Techs. v. Microsoft Corp.*, 627 F. 3d 859 (Fed. Cir. 2010)........................... 13, 16

*SiRF Tech., Inc. v. I.T.C.*, 601 F.3d 1319 (Fed. Cir. 2010)............................................................. 16

*Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316 (Fed. Cir. 2001)........................ 19

*TriMed, Inc. v. Stryker Corp.*, 608 F. 3d 1333 (Fed. Cir. 2010).................................................... 25

*TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151 (Fed. Cir. 2004)........................ 20

*Winbond Elecs. Corp. v. I.T.C.*, 262 F.3d 1363 (Fed. Cir. 2001) ................................................... 2

**Statutes**
35 U.S.C. § 282...................................................................................................................................... 1

35 U.S.C. § 101............................................................................................................................ *passim*

35 U.S.C. § 112.................................................................................................................................... 25

35 U.S.C. § 103.................................................................................................................................... 18

## I.      INTRODUCTION

The '887 Patent is presumed valid and nothing in Kickstarter's Opposition Brief ("KOB") overcomes this strong presumption.  Kickstarter has not produced clear and convincing evidence to meet its burden of proof.  In contrast, ArtistShare has shown that the '887 Patent should be held valid as a matter of law.  Summary judgment of validity is particularly appropriate with respect to the dependent claims because Kickstarter has not provided any argument.  *See* 35 U.S.C. § 282.  Kickstarter has not explained any basis for invalidating claims 2-3, 5, 7-9, 11-16 and 19-34, which are entitled to a presumption of validity.  Kickstarter's failure to address these claims, separately, requires that they be found valid, as a matter of law.

First, Kickstarter alleges that Mr. Thompson is a joint inventor, despite the fact that Mr. Thompson has never testified that he is an inventor and has expressly stated in a signed declaration that he is not an inventor.  Kickstarter has failed to offer clear and convincing evidence of joint inventorship, and its argument should be rejected as a matter of law.

Second, Kickstarter's own definition of "crowdfunding" dooms its patent eligibility argument and demonstrates that it has not provided clear and convincing evidence.  The claims of the '887 Patent represent narrow ***applications*** within the field of marketing and funding creative works.  The claims do not cover an abstract idea and the specific limitations of the claims represent clear technological improvements over the alleged prior art.

Third, Kickstarter's obviousness argument fails both as a matter of law and in light of the insufficient evidence produced by Kickstarter.  Factually, Kickstarter has not produced clear and convincing evidence because the alleged prior art fails to teach the limitations of the claims. Kickstarter did not even attempt to show that the prior art covers any of the dependent claims. Legally, Kickstarter has not provided any motivation to combine the references in the manner it

proposes. Kickstarter's undifferentiated assertion of "common sense" is insufficient, as a matter of law. Kickstarter also ignores clear secondary factors, including its own attempts to purchase an ownership interest in the '887 Patent. Summary judgment of non-obviousness is appropriate.

Finally, dependent claims 4, 6, and 10 are definite because one of ordinary skill in the art would have no difficulty appreciating that the "interested party" is the "Patron" of claim 1.

## II.    ARGUMENT

### A.    ArtistShare Is Entitled To Summary Judgment of Correct Inventorship

Kickstarter has failed to produce clear and convincing evidence of incorrect inventorship. To the contrary, the evidence clearly demonstrates that Mr. Camelio is the sole inventor.

#### 1.    The Presumption of Validity Applies to Inventorship and Kickstarter Has Not Produced Evidence Sufficient to Meet Its Burden of Proof

The presumption of validity extends to inventorship challenges. *See Winbond Elecs. Corp. v. I.T.C.*, 262 F.3d 1363, 1371 (Fed. Cir. 2001). Kickstarter was required to produce clear and convincing evidence with respect to inventorship. Even then, ArtistShare need only come forward with evidence sufficient to show that Kickstarter's evidence is not clear and convincing, as a matter of law. *See id.* at 1372. Kickstarter failed to produce clear and convincing evidence.

#### 2.    Mr. Thompson's Declaration Should be Dispositive

Mr. Thompson's declaration denying inventorship should be dispositive. A claim of non-joinder of an inventor requires clear and convincing evidence of: 1) reliable testimony supporting inventorship, and 2) corroboration. *See General Elec. Co. v. Wilkins*, 750 F.3d 1324, 1330 (Fed. Cir. 2014) ("the putative inventor must first provide credible testimony that only then must be corroborated."). Mr. Thompson did not claim to be an inventor during his deposition and confirmed he was not an inventor in his declaration.

Mr. Thompson submitted his declaration to confirm that he is ***not an inventor***, and has

never considered himself an inventor, despite Kickstarter's efforts to pay him.  *See* JAX58 at ¶3. Mr. Thompson's testimony does not match up with Kickstarter's characterizations of it.  Mr. Thompson never claimed to be the originator of any of the ideas that are claimed in the '887 Patent.  At best, Mr. Thompson testified that he could not recall, or could only recall general conversations.  *See, e.g.,* JAX5 at 166:7-23.  This testimony does not support joint inventorship.

Kickstarter cannot provide clear and convincing evidence of joint inventorship because Mr. Thompson has repeatedly denied that he is an inventor.  The sole case Kickstarter identified on this point does not support its position.  In *Magnetar Techs. v. Six Flags Theme Parks*, the alleged inventor unequivocally claimed that he was the originator of subject matter claimed in the patents, and his testimony was clearly corroborated.  *See* No. 07-cv-127, 2014 WL 547712, at * 6 (D. Del. Feb. 7, 2014).  Here, Thompson has denied being an inventor.

### 3.   Kickstarter Has Not Produced Any Evidence that Mr. Thompson Contributed to the Conception of Claims 1, 8 and 24

Kickstarter has not produced any evidence suggesting that Mr. Thompson contributed to the conception of claim 1, 8 or 24.  Kickstarter still has not explained what "a 'mini stock market' for the trading of music publishing rights" has to do with auctioning ***entitlements*** associated with a creative project.  In claim 1, the Artist offers a "Sales Container including at least one of a ***product, a service, and a patronage***."  *See* JAX1, claim 1.[1]  Offering "publishing rights" as part of a sales container is entirely beyond the scope of claim 1.  The computer programs to manage "auctions," which formed part of the Court's claim construction refers to auctioning sales containers, not publishing rights.  Even Mr. Thompson recognized during his deposition that the idea for a "mini stock market" was unrelated to Mr. Camelio's invention for a fan funding system.  *See* JAX5, Thompson Dep. at 93:21-94:17.  As such, Kickstarter has failed

---

[1] All emphasis in this brief has been added, unless otherwise indicated.

to produce any evidence that Mr. Thompson conceived of anything relevant to claims 1, 8, or 24.

Kickstarter ignores the fact that claims 8 and 24 do not contemplate offering publishing rights.  Claim 8 relates to methods for offering **Sales Containers** including "at least one of a product, a service, and a patronage" (claim 1), **not publishing rights**.  Claim 24 relates to methods for offering "at least one entitlement …, said entitlement including at least one of a product, a service, and patronage," (claim 18), **not publishing rights**.

The fact that both claims 1 and 18 require outright ownership of the underlying creative work precludes Kickstarter's entire theory of inventorship, as a matter of law.  Claims 1 and 18 require that the artist retain ownership. This is described in the specification as "Group I Embodiments," which relates to "presenting offers to users… for entitlements and/or patronage levels from the artist in exchange for capital for a project." (JAX1 at col. 9, lines 60-65).  Kickstarter cites exclusively to a different embodiment – "Group II Embodiments," which relate to "the selling/auctioning or licensing **rights** of a project by the artist."  *Id.* at col. 19, lines 31-32.

The claims of the '887 Patent only relate to "Group I Embodiments," **not** "Group II Embodiments."  This fact is irrefutable because the Examiner specifically limited the claims to Group I Embodiments during prosecution.  *See* JAX93.  The Patent Examiner found the Group II claims to be patentably distinct from the issued claims of the '887 Patent.  This demonstrates that Mr. Thompson is not an inventor of the claims of the '887 Patent, even under Kickstarter's own theories.  *See Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1461 (Fed. Cir. 1998) ("this court must determine what Choi's contribution was and then **whether that contribution's role appears in the claimed invention**.").  Kickstarter only theorizes that Mr. Thompson contributed to "Group II Embodiments," but that subject matter was not patented.  ArtistShare is therefore entitled to summary judgment of correct inventorship, as a matter of law.

Kickstarter's entire rebuttal argument for why Mr. Thompson's alleged contribution was supposedly "significant" is also based on *the specification*, not the claims.  Again, while the specification discusses an "Embodiment Group II," that subject matter *is not claimed*. Kickstarter *ignores the claims* entirely, even though they are the sole basis for inventorship.  For example, Kickstarter cites JAX1, 3:64-4:8, which falls directly under the heading "Embodiment Group II," which was unclaimed.  Kickstarter does not allege that Mr. Thompson contributed to the *claimed* inventions; thus ArtistShare is entitled to summary judgment.

### 4.   Kickstarter Cannot Overcome Mr. Camelio's Evidence of Prior Conception with Respect to Claims 7, 13, and 14

ArtistShare provided conclusive evidence of prior conception by Mr. Camelio. The files and metadata cited by ArtistShare were produced to Kickstarter during discovery and were available for Kickstarter's inspection.   Kickstarter cannot now complain that it failed to adequately review the source code.  ArtistShare also responded to Kickstarter's interrogatories with an extensive narrative, including source code, and specifically reserved its right to "rely on any of the source code it has produced …with respect to the conception and reduction to practice of the '887 Patent." JAX45 at 9.  Kickstarter cannot claim surprise.[2]

With respect to claim 7, Mr. Camelio's March 19, 2002 (2:27 PM) PowerPoint presentation is conclusive because it pre-dates all of the evidence produced by Kickstarter.  Prior to Mr. Thompson's March 19, 2002 (10:39 PM) email (JAX54), there is *no evidence* aside from Mr. Thompson's uncorroborated recollection of "brainstorming" with Mr. Camelio during their first meeting on March 18.  But undifferentiated testimony of "brainstorming" is insufficient to support a claim of incorrect inventorship.  *See, e.g., Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1328 (Fed. Cir. 2004).   In the absence of any evidence to the contrary, the

---

[2] Kickstarter's argument regarding the dates reflected in the metadata is immaterial.  Obviously the "date created" is associated with the date the files were copied for production and the "last modified" date is accurate.

presumption of correct inventorship controls.

In any event, Mr. Thompson **never testified** "that it was his idea to expand beyond music," as Kickstarter falsely suggests.  Mr. Thompson was unwilling to take that position, even in response to Kickstarter's leading questions.  *See* JAX5 at 166:7-23 ("***I don't know that it was an idea that I contributed***.").  At best, Kickstarter's inventorship theory is based on "I don't know" testimony, **not testimony of inventorship**.  This is not clear and convincing evidence.

With respect to claims 13 and 14, Kickstarter concedes that Mr. Camelio already envisioned providing sheet music to Patrons as an entitlement before meeting with Mr. Thompson.  Nevertheless, Kickstarter suggests that this fact somehow "corroborates that Camelio had **not** conceived of … access[ing] 'the artist's creative work process.'"  KOB at 16 (emphasis in original).  Kickstarter's logic here is unclear.  In any event, ArtistShare has produced conclusive evidence of Mr. Camelio's prior conception of providing access to the creative process as of March 19, 2002 at 2:27 PM.  *See, e.g.* JAX53 at ART-18630 ("Enter to win and ***spend a day in the recording studio with the Artist***"); JAX59.  This passage pre-dates any evidence produced by Kickstarter.

### 5.  Claim 17 (Managing/Viewing Financial and Marketing Information)

Mr. Thompson **never** testified that he proposed incorporating managing and viewing financial and marketing information into ArtistShare.  Mr. Thompson testified that he recommended a potential vendor for royalty accounting in case "for any reason moving forward that [ArtistShare] were to provide any publishing, you know, like as a record label..."  JAX5 at 97:8-10.  Mr. Thompson's help in planning ArtistShare's internal business operations is irrelevant to Mr. Camelio's prior work on the inventions of the '887 Patent.  Mr. Thompson's vendor suggestion remains, at best, nothing more than a reference to a publicly available product,

6

which is not conception.  *See Hess v. Advanced Cardiovascular Sys., Inc.*, 106 F.3d 976, 981 (Fed. Cir. 1997) (specifying a suitable product to meet the inventors' needs is not an invention).

Kickstarter offers nothing that would defeat Mr. Camelio's evidence of prior conception, except to complain that the Funding Meter shown in JAX64 is rudimentary.  But the Funding Meter in JAX64 is more than sufficient to show that Mr. Camelio was already contemplating a system that could be queried for financial and marketing information and provide useful reports from the data.  Kickstarter has not overcome this clear evidence of prior conception.

**6.**   Correction of Inventorship Is Unnecessary, But Would Be Allowable

Prior to receiving Mr. Thompson's declaration, Kickstarter was secretly trying to purchase rights to the patent and, if its plan was successful, move to correct inventorship.  *See* JAX76.   Kickstarter now claims that correcting inventorship is impossible, which is wrong.  In the event that the Court deems that Mr. Thompson may be an inventor, ArtistShare should be allowed to correct inventorship.  *See In re Bennett*, 766 F.2d 524, 528 (Fed. Cir. 1985) ("conversion of inventorship should be liberally allowed.").  Given both Mr. Thompson and Mr. Camelio's testimony that Mr. Thompson is not an inventor, his omission would, at best, be a simple error, for which correction under § 256 is intended.

**B.**   <u>ArtistShare Is Entitled To Summary Judgment That The '887 Patent Claims Patentable Subject Matter</u>

The claims of the '887 Patent cover patent eligible subject matter in the form of a specific and novel client-server architecture to operate a suite of remotely operable software tools for configuring, launching, and managing an online fan funding project.

**1.**   Kickstarter Failed to Produce Clear and Convincing Evidence of Unpatentable Subject Matter

Kickstarter has ignored the presumption of patent validity and its burden to produce clear

and convincing evidence.  Under the Patent Act, "[a] patent *shall be* presumed valid. Each claim of a patent … shall be presumed valid *independently* of the validity of other claims." 35 U.S.C. § 282(a).  In the Federal Circuit's *en banc* decision in *CLS Bank, Intern. v. Alice Corp. Pty. Ltd*, a majority of the Court held that the presumption of validity applies to subject matter eligibility under § 101 as it does to any other validity challenge.  *See* 717 F.3d 1269, 1284 (Fed. Cir. 2013) (*en banc*) (*per curium*), *aff'd* 134 S.Ct. 2347 (2014); *see also id*. at 1304-1305 (concurrence).

Nothing in the Supreme Court's decision affirming *CLS Bank* modified this controlling precedent.  The Federal Circuit's *per curiam* decision in *CLS Bank* continues to be *the controlling law* on the burden of proof when a patent is challenged under § 101.  *See Applied Innovation, Inc. v. Comm. Recovery Corp.*, No. 11-cv-00330, 2013 WL 4214319, at *2 (E.D. Wash. August 14, 2013) ("any attack on an issued patent based on a challenge to the eligibility of the subject matter must be proven by clear and convincing evidence.") (citing *CLS Bank*).  *See also Microsoft Corp. v. i4i Ltd. Partnership*, 131 S.Ct. 2238, 2245 (2011).

**2.**  Kickstarter's Theory of Ineligibility Fails Under Step 1 of *Alice Corp.*

The Supreme Court has admonished courts to "tread carefully" when considering whether a claim recites an abstract idea.  *Alice Corp. v. CLS Bank Int'l.*, 134 S.Ct. 2347, 2354 (2014).  Yet, Kickstarter encourages the Court to improperly reduce the inventions of the '887 Patent to an abstract notion by ignoring the substantive limitations of the claims entirely and imagining some "gist" or "heart" of the invention.  But "an invention *is not* rendered ineligible for patent simply because it *involves* an abstract concept." *Id*. (citing *Diamond v. Diehr*, 450 U.S. 175, 187 (1981); *see also Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 345 (1961) ("[T]here is no legally recognizable or protected 'essential' element, 'gist' or 'heart' of the invention."). "'*[A]pplication[s]*' of such concepts 'to a new and useful end,' … remain

8

eligible for patent protection."  *Id.* (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

Under Step 1 of the *Alice Corp.* decision, the court assesses the claim language to determine whether the claims describe an abstract idea.  *Alice Corp.*, 134 S.Ct. at 2354. Kickstarter initially argued that "crowdfunding" is an abstract idea, without defining it.  Now, Kickstarter argues that the abstract idea is "raising money from patronage."  Kickstarter has not shown why any of the claims of the '887 Patent merely describe this allegedly abstract concept. Kickstarter has also failed to address the more pertinent question of whether the claims of the '887 Patent **embrace that concept on their face**.  Because the claims do not simply describe "raising money from patronage," ArtistShare is entitled to summary judgment as a matter of law.

### a. Kickstarter Ignores the Concrete Limitations of the Claims and Improperly Assumes They Embrace an Abstract Concept

Using Kickstarter's new definition of "crowdfunding," it is clear that the claims of the '887 Patent are not even arguably drawn to an abstract idea.  Kickstarter now states that:

> "crowdfunding" is merely a label for the abstract idea of **raising money from a crowd of fans or potential fans/patrons**. The concept could be called "**raising money from patronage**" or even given some nonsensical label.

KOB at 5.  Kickstarter has not explained how the claims of the '887 Patent recite this idea. Kickstarter has, at best, identified **a broad field** that is not described by the claims.  Such flimsy "analysis" is not clear and convincing evidence.

Kickstarter **disregards** the claim language entirely and instead relies on **the abstract** of the '887 Patent.  For example, Kickstarter inaccurately argues that "[t]he '887 Patent **expressly claims** 'a system and method for raising financing and/or revenue by [an] artist for a project." KOB at 4.  This quote comes from **the abstract** of the '887 Patent, not the claims.  Kickstarter completely failed to explain why it believes the claims of the '887 Patent simply describe "raising money from patronage," because they do not.

9

Kickstarter also ignores the key question under Step 1 of *Alice Corp.,* which is whether the **claims**, or any part of the claims, simply **describe** that concept.  *See Alice Corp.*, 134 S.Ct. at 2356.  Kickstarter declines to analyze the claim language because the claims describe narrow and novel systems, and do not merely seek to claim "raising money from patronage."

The claims of the '887 Patent specify systems for "marketing **and** funding one or more projects of an artist comprising **a server** having applications programs operable from a remote site."  *See, e.g.* Claim 1.  The systems that Mr. Camelio invented provide a series of new and useful, remotely operable **software tools** for creating and managing an online project.   The system includes programs for: 1) "providing software tools to an artist or Account Manager to manage at least one project…;" 2) "receiving information from the artist or Account Manager regarding at least one Sales Container…," 3) "transmitting offer data from a server to a client via a network," 4) "transmitting acceptance data back to the server from the client;" 5) "processing the acceptance data by the server;" 6) "registering contact and marketing information regarding Patrons in a database;" and 7) "providing the artist or Account Manager software tools to manage communications, through said Patron database…"   *Id*.   This specific system for financing and marketing a creative work using specific software tools goes far beyond an abstract like "raising money from patronage."

### b.  Kickstarter *Assumes* the Claims Describe Abstract Subject Matter in Clear Violation of Supreme Court Precedent

Kickstarter's interpretation of *Alice Corp*. is contrary to clear Supreme Court precedent because Kickstarter assumes the claims describe an abstract idea. "[I]f carried to its extreme, [this approach would] make all inventions unpatentable because all inventions can be reduced to underlying principles of nature which, once known, make their implementation obvious." *Diamond v. Diehr*, 450 US 175, 189 n. 12 (1981).  Because no part of the asserted claims of the

'887 Patent recite or describe an abstract concept, ArtistShare is entitled to summary judgment.

When the Supreme Court has held a patent claim ineligible, it has done so because the claims, themselves, ***described*** the underlying abstract idea.  *See, e.g., Alice Corp.*, 134 S.Ct. at 2356 ("Petitioner acknowledges that its claims ***describe*** intermediated settlement"); *id.* ("in *Bilski*…, the claims ***described*** 'the basic concept of hedging, or protecting against risk.'") (quoting *Bilski v. Kappos*, 561 U.S. 593, 611 (2010)).  Yet, the claims of the '887 Patent do not simply ***describe*** "raising money from patronage."  Rather, the claims of the '887 Patent are directed towards a particularized and novel system for providing software tools for preparing, launching, and managing a fan funded project.

In *Alice Corp.*, the Supreme Court declined to offer a bright-line definition of "abstract" ideas, and instead looked to its past decisions to help determine when a patent claim merely ***describes*** an abstract idea under Step 1.  The claims previously held ineligible by the Supreme Court are instructive because, unlike the '887 Patent, they each ***describe*** the underlying fundamental principle within the claim limitations.  *See Alice Corp.*, 134 S.Ct. at 2359 (one could not practically apply the concept of intermediated settlement without necessarily practicing the claim); *Bilski v. Kappos*, 130 S. Ct. 3218, 3231 (2010) ("The concept of hedging, ***described*** in claim 1 and reduced to a mathematical formula in claim 4, is an unpatentable abstract idea").  Here, the claims do not simply describe "raising money from patronage," and are therefore eligible for patent protection as a matter of law.

### 3.  Kickstarter's Argument Also Fails Under Step 2 of *Alice Corp.*

Even assuming that the asserted claims of the '887 Patent describe an abstract concept, which they do not, the inventions of the '887 Patent would still be patentable under Step 2 of *Alice Corp.*  Under the second step, courts "distinguish between patents that ***claim*** the 'buildin[g]

11

block[s]' of human ingenuity and those that integrate the building blocks into **something more**, … thereby 'transform[ing]' them into a patent-eligible invention." *Alice Corp.*, at 2354.  To do so, courts "consider **the elements of each claim** both individually and '**as an ordered combination**' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible **application**." *Id.* at 2355.  The Supreme Court "described step two of this analysis 'as a search for an 'inventive concept''— i.e., an element or **combination of elements** that is "sufficient to ensure that the patent in practice amounts to **significantly more than a patent upon the [ineligible concept] itself**." *Id.* at 2355.

### a.  The Individual Elements of the Asserted Claims Represent Technological Advances Over the Prior Art

The asserted claims of the '887 Patent represent significantly more than a description of raising money from fans and an abstract instruction to "apply it" using a computer.  Rather, as the Patent Examiner found during prosecution, the inventions of the '887 Patent include several technological advances over the prior art.  For example, claim 1 requires a system (i.e. a server) "having application programs operable from a remote site for" achieving a series of tasks and providing a specific set of capabilities.  The remote provision of these capabilities represent a technological advance over prior art attempts at what later became associated with "crowdfunding."  The Examiner specifically found that several of the concrete, remotely operable tools provided under Mr. Camelio's system represented a technological improvement.

- The Patent Examiner found that a server with "programs operable from a remote site for … providing software tools to an artist … to manage at least one project" was a significant **technological advance** over the prior art.  *See* JAX94 (Examiner's Statement Regarding Allowable Subject Matter) ("prior art references … in any combination failed to teach or render obvious to one of ordinary skill in the art, … providing software tools to an artist or Account Manager to manage at least one project, the project comprising at least one creative work.").  This feature is also a significant improvement over the alleged prior art produced by Kickstarter, such as Marillion or November Project, which required **locally installed** software and/or manual coding to prepare and manage an online funding

12

campaign.  *See* JAX46, Monroe Rept. at ¶¶ 198-260.

- The Examiner also found that a server providing "programs operable from a remote site for … receiving information from the artist or Account Manager regarding at least one Sales Container associated with the at least one project" represented another ***technological advance*** worthy of patent protection.  *See* JAX94 ("prior art references … failed to teach or render obvious to one of ordinary skill in the art, the flowing limitations … receiving information from the artist or Account Manager regarding at least one Sales Container…").  This limitation also represents a vast improvement over prior attempts by people like Marillion and November Project that teach coding web pages manually or using shopping carts that were not intended for the purpose of funding a creative project.  *See* JAX46, Monroe Rept. at ¶¶ 198-260.  Thus, a server with remotely operable programs for defining a sales container is inventive and patent-eligible.

- The Examiner also found that a server providing "programs operable from a remote site for … registering contact and marketing information regarding Patrons in a database; ***and*** providing software tools to manage communications, through said Patron database" was subject matter representing a technological advance over the prior art.  *See* JAX 94 ("prior art references … in any combination failed to teach or render obvious to one of ordinary skill in the art, the flowing limitations … managing communications, through said patron database, from the artist or Account Manager to Patrons regarding sales and marketing of one or more projects.").  The ability of the server to register patrons within a novel Patron Database through which the artist could later communicate with Patrons was, even standing alone, novel and patent-eligible at the time of the invention.

Thus, even when viewed in isolation, the limitations of the claims of the '887 Patent represent significant, ***technological improvements*** over the alleged prior art.  *See Research Corp. Techs. v. Microsoft Corp.*, 627 F. 3d 859, 869 (Fed. Cir. 2010) ("[I]nventions with specific applications or improvements to technologies in the marketplace are not likely to be so abstract that they override the statutory language and framework of the Patent Act.").

### b.  The Asserted Claims of the '887 Patent, As a Whole, are Patentable

In *Alice Corp.* the Court specifically highlighted the need to consider the "combination of [claim] elements" because that is essential to remain "consistent with the general rule that patent claims '***must be considered as a whole***,'" under § 101.  *Alice Corp*., at 2355 n. 3.  The Supreme Court has consistently stressed that it is "inappropriate" to "dissect" patent claims:

In determining the eligibility of respondents' claimed process for patent

13

> protection under § 101, their claims **must be considered as a whole**. It is **inappropriate to dissect the claims** into old and new elements and then to ignore the presence of the old elements in the analysis. This is particularly true in a process claim because a new combination of steps in a process may be patentable even though all the constituents of the combination were well known and in common use before the combination was made. ***The "novelty" of any element or steps in a process, or even of the process itself, is of no relevance*** in determining … patentable subject matter.

*Diamond v. Diehr*, 450 US 175, 188-89 (1981) (quoted in *Alice Corp.*, at 2355 n. 3). The asserted claims of the '887 Patent require significantly more than reciting the fundamental steps of "crowdfunding" and then instructing the user to "apply it" on a general purpose computer.

When the claim limitations are viewed as a whole, as they ***must be***, the "inventive concept" of the '887 Patent becomes apparent.  By conceiving of and constructing a server equipped to ***provide*** the remotely operable software tools detailed above, Mr. Camelio invented ***improved*** systems for allowing artists to market and fund their own creative works over the Internet.  By reducing a complex and unique set of online tasks into a specific combination of "programs operable from a remote site for … ***providing*** software tools," Mr. Camelio built a system that allows artists who never would have been able to market and fund a project on their own, to do so through his remotely operable system.  *See* JAX46 at ¶60.  Thus, the '887 "[patent in practice amounts to significantly more than a patent upon the [ineligible concept]" of raising money from a crowd of fans or potential fans/patrons.  *Alice Corp.*, at 2355 (alteration in original).  Rather, it is a patent for a technological improvement, whereby artists having no particular skill in computer science or web page construction can design, implement, and manage the marketing and funding of a project, using the specific system and online tools invented by Mr. Camelio.

### c.  Kickstarter Misapplies Step 2 Under *Alice Corp.*

Kickstarter acknowledges the Supreme Court's legal framework under Step 2 of *Alice*

*Corp.*, but fails to properly apply it.  First, Kickstarter mischaracterizes the *Alice Corp.* decision by arguing that the Court's reference to "generic computer implementation" somehow indicates that known computer components cannot be used as the building blocks for new systems.  This is not what the Supreme Court stated in *Alice.*  The Supreme Court's reference to "wholly generic computer implementation" relates to ineligible patent claims that **only recite the steps necessarily associated with an abstract idea** so that they amount to nothing more than an instruction to "apply it with a computer." *See Alice Corp.*, 134 S.Ct. at 2358. The claims of the '887 Patent represent far more than an instruction to "apply" the ideas of "raising money from a crowd of fans or potential fans/patrons" on a computer.  The claims require remotely operable software tools for launching and managing an online project.

In *Alice Corp.*, the Court explained that the concern over "wholly generic computer implementation" "accords with the **preemption** concern that undergirds … §101 jurisprudence." *Id.  See also id.* at 2354 ("We have described the concern that drives this exclusionary principle as one of pre-emption.").  In *Bilski*, the Supreme Court held that a claim that merely described hedging was ineligible because the claim "would **pre-empt** use of this approach in all fields, and would effectively grant a monopoly over an abstract idea" *Bilski,* at 611–612.   In *Alice Corp.*, the Court extended the reasoning in *Bilski* to hold that a claim that amounts to no more than an abstract idea and the instruction to "apply" it using a computer, generically, is still just an attempt to monopolize an abstract idea.  *See Alice Corp.*, 134 S.Ct. at 2358.  However, considering the specificity with which the inventions of the '887 Patent are claimed, there is no threat that the notions of "raising money from patronage" would be preempted.

To appreciate the narrow footprint of the '887 Patent, one need only look to the alleged prior art produced by Kickstarter.  As Kickstarter **has conceded**, none of its alleged prior art

actually anticipates any of the claims of the '887 patent, which is why Kickstarter is forced to attempt to combine them.   Thus, by Kickstarter's own admission, nothing disclosed in the Marillion, November Project, Blackbaud, idealive, Lake, or Johnston publications would be precluded by any of the claims of the '887 Patent. The fact that Kickstarter cannot even argue that the '887 Patent would preclude any of these alleged prior art systems is strong evidence that the claims of the '887 Patent "pose no … risk of pre-emption, and therefore remain eligible for the monopoly granted under our patent laws." *Alice Corp.*, at 134 S.Ct. at 2355.

### 4.  Kickstarter's Pre-*Alice Corp.* Federal Circuit Cases are Inapposite

Finally, none of Kickstarter's arguments about the pre-*Alice Corp*. Federal Circuit case law corrects the problems faced by Kickstarter here.   These decisions are all distinguishable because the claims in those cases merely described an abstract concept.  *See* ArtistShare Opening Brief at 17-18.  The claims presented in the '887 Patent are far more similar to Federal Circuit decisions, wherein the eligibility of the claims was upheld.

- In *Research Corp. Techs. v. Microsoft Corp.*, 627 F.3d 859 (Fed. Cir. 2010), the Federal Circuit sustained the eligibility of claims for "halftoning" digital images because "[t]he invention presents functional and palpable applications in the field of computer technology." *Id.* at 868.  Here, the Patent Examiner found that the '887 Patent also presented a functional and palpable application in the field of computer technology.  *See* JAX 94.

- In *SiRF Tech., Inc. v. I.T.C.*, 601 F.3d 1319, 1332, (Fed. Cir. 2010), the Federal Circuit sustained the eligibility of claims in the field of GPS technology because each claim required a particular GPS receiver, which was a "specific machine … [that] impose[s] meaningful limits on the claim's scope to impart patent-eligibility." *Id.*  Likewise, the claims of the '887 Patent satisfy the "machine or transformation test," because the claims define a specific server (a machine) that hosts a detailed suite of remotely operable application programs created by Mr. Camelio.  *See also Bilski*, at 3227 ("This Court's precedents establish that the machine-or-transformation test is a useful and important clue, an investigative tool, for determining whether some claimed inventions are processes under § 101.").

- In *In re Alappat*, 33 F.3d 1526 (Fed. Cir. 1994) (*en* banc), the Federal Circuit sustained the eligibility of a patent claiming a particular "rasterizer," despite the fact that it used several mathematical equations to function, because the rasterizer was "not a disembodied mathematical concept which may be characterized as an 'abstract idea,' but rather a specific

machine to produce a useful, concrete, and tangible result." *Id.* at 1544.  Likewise, the claims of the '887 Patent define a particular server hosting a precise suite of remotely operable software tools that "produce a useful, concrete, and tangible result," the ability for artists of any computer skill lever to create, launch, and manage their own project.

Finally, ArtistShare cited the *Ultramercial* case as persuasive authority even though it was vacated and remanded to the Federal Circuit for further consideration.  The Federal Circuit's decision in that case was based on the Supreme Court's decision in *Mayo Collaborative Services v. Prometheus Labs., Inc.*, upon which the Supreme Court heavily relied in *Alice Corp*.  Because the claims of the '887 Patent represent specific applications and improvements over technologies in the marketplace, they are not abstract ideas but patentable systems under 35 U.S.C. § 101.  ArtistShare is entitled to summary judgment of patentable subject matter.

### C.    ArtistShare Is Entitled To Summary Judgment of Non-Obviousness

Kickstarter's obviousness arguments fail to overcome the presumption of validity by clear and convincing evidence.  Kickstarter has conceded that none of its alleged prior art anticipates the claims of the '887 Patent.  *See* KS LR 56.1 Counterstatement at ¶¶ 49-50.  However, even in combination, Kickstarter's alleged prior art does not meet all of the claim limitations.  Furthermore, Kickstarter has not provided ***any*** reason for invalidating any of the dependent claims, aside from a single footnote, wherein Kickstarter simply ***concludes*** that the dependent claims do not require any analysis.  *See* KS Opening Brief. at 10 n. 4.  Legally, Kickstarter also failed to disclose any motivation for combining references in the manner proposed.  Kickstarter also has not considered any secondary factors of non-obviousness.  ArtistShare is entitled to summary judgment of validity.

### 1.  Kickstarter's Theory of Obvious is Based on Impermissible Hindsight

Kickstarter failed to apply the Supreme Court's standards for combining prior art references.  *See KSR Intern. Co. v. Teleflex Inc.*, 127 S. Ct. 1727 (2007).  The party asserting

obviousness has the burden to actually present a cogent basis for combining prior art references. *See, e.g., In re Cyclobenzaprine Hydrochloride*, 676 F. 3d 1063, 1020-71 (Fed. Cir. 2012). In this case, Kickstarter has proposed more than ***87 billion*** potential prior art combinations without explaining why to combine any of them. *See* JAX 69, Mollick Dep. at 173:9-10.

### a.  Kickstarter Has Not Provided any Motivation to Combine

Kickstarter has not identified any motivation to combine the alleged prior art.  Kickstarter states that it was unable to identify any particular motivation to combine references because "the invention was so well known in the prior art."   KOB at 31. But if that was true, why has Kickstarter failed to identify a single anticipatory prior art reference that includes every claim limitation?  Kickstarter had the burden to provide a motivation to combine and failed to do so.

Kickstarter relies exclusively on the report of Ethan Mollick, who never identifies any motivation for combining the prior art:

> A person of ordinary skill in the art would have been motivated to combine these references based on their shared fundraising teachings, as well as the well-known principles of managing combinations using database of contacts, providing direct communication with recipients.

KOB at 31 ((JAX44, Mollick Rpt. ¶ 213.). This boilerplate statement is deficient as a matter of law, and demonstrates why the entire Mollick Report should be stricken. *See* ArtistShare's Opening Brief at 24-25.  First, nothing in Mr. Mollick's report ties his analysis to the period when the inventions of the '887 Patent were invented.  The question under §103 is "[w]hether the claimed subject matter would have been obvious … ***at the time of the invention***," not fourteen years after the fact.  *Plantronics, Inc. v. Aliph, Inc.*, 724 F. 3d 1343, 1353 (Fed. Cir. 2013).  Kickstarter's failure to produce contemporaneous evidence of any motivation to combine is fatal to its entire obviousness theory.

Furthermore, Mr. Mollick's statement amounts to nothing more than a conclusory

assertion that it would have been ***common sense*** to combine references merely because they are allegedly from the same field of endeavor.  *See* KOB at 31.  The Federal Circuit has repeatedly rejected such boilerplate "common sense" arguments.  *See, e.g., Mintz v. Dietz & Watson*, 679 F.3d 1372, 1377 (Fed. Cir. 2012).  "Where, as here, the necessary ***reasoning*** is absent, [the Court] cannot simply assume that 'an ordinary artisan would be awakened to modify prior art in such a way as to lead to an obviousness rejection.'"  *Plantronics*, 724 F.3d, at 1354.

ArtistShare is entitled to summary judgment of non-obviousness because there is nothing in the record to support any motivation for combining the alleged prior art references. "Although the obviousness analysis is somewhat flexible, a district court's conclusions with respect to obviousness ***must*** find support in the record."  *Id*. at 1354.  There is simply nothing in the record to support any obviousness combinations.  *See, e.g., Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1329 (Fed. Cir. 2001) ("Broad conclusory statements offered by Telemac's experts are not evidence and are not sufficient to establish a genuine issue of material fact."); *see also SSI Sys., Int'l., Inc. v. TEK Global SRL*, n. 112 (N.D. Cal. March 7, 2013).

### b.  Kickstarter's Alleged Prior Art Does Not Disclose the Limitations of the Claims the '887 Patent

Even assuming that Kickstarter had produced any evidence of a potential motivation to combine the prior art references, which it has not, the prior art it has produced still does not disclose the limitations of the claims of the '887 Patent.

#### i.  "A system for marketing and funding one or more projects of an artist comprising a server having application programs operable from a remote site for:…"

ArtistShare has demonstrated that there is ***no evidence***, either testimonial or documented, regarding any remotely operable application programs in any idealive publication.  Neither the testimonial evidence nor the documents produced by Kickstarter suggest that idealive ***provided***

any remotely operable application programs for managing their shareholder proposals.  *See, e.g.,* JAX3, Reid Dep. at 92:15-94:4.  When ArtistShare pointed out the glaring gaps in the idealive publications, Kickstarter's only response was to argue hypotheticals about idealive (e.g. "pages like idealive ***could have*** 'executable scripts…'") (KOB at 24), or to point out that PHP "is a server-side scripting language for web development," generally.  *Id*.  Neither of these conclusory statements relate to whether the idealive publications actually ***disclose*** the claim limitation.

Kickstarter has failed to produce clear and convincing evidence with respect to idealive and invites error by suggesting that the Court may infer facts about idealive that do not appear in ***any*** of the documents produced by Kickstarter.  "Corroboration is ***required*** of any witness whose testimony alone is asserted to invalidate a patent." *TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1159 (Fed. Cir. 2004) (citation omitted); *Checkpoint Sys., Inc. v. All–Tag Sec. S.A.*, 412 F.3d 1331, 1339 (Fed. Cir. 2005).  Here, Mr. Reid could not recall what, if anything, idealive provided by way of remotely operable application programs and the documents produced by Kickstarter do not shed any further light on the subject.  Idealive was unable to locate any documents, including its source code.  *See* JAX3, Reid Dep. at 99: 22-23.

With respect to Blackbaud, Kickstarter fails to explain why one of ordinary skill in the art would have looked to Blackbaud at all.  Blackbaud is not "analogous art" and therefore is irrelevant to the claims of the '887 Patent.  *See K-TEC, Inc. v. Vita-Mix Corp.*, 696 F.3d 1364, 1374-75 (Fed. Cir. 2012).  As in *K-TEC*, Mr. Mollick offers no reason why one of ordinary skill in the art would have considered Blackbaud, software for organizing a charitable donation drive, when attempting to solve the problems solved by the '887 Patent.  Accordingly Blackbaud is not analogous art and ArtistShare is entitled to summary judgment.  In any event, the Blackbaud references do not disclose the particular "application programs operable from a remote site"

claimed in the '887 Patent, as explained below.

> ### ii. "a server having application programs operable from a remote site for … providing software tools to an artist or Account Manager to manage at least one project"

Kickstarter has not produced clear and convincing evidence of prior art containing this limitation. Kickstarter argues that "idealive **and** Blackbaud" disclose this limitation without ever explaining which alleged reference it is actually relying on in support of which software tool. *See* KOB at 24. Kickstarter's inability to make a specific obviousness argument, at this late hour, demonstrates why ArtistShare is entitled to summary judgment. Neither idealive nor Blackbaud discloses a server having the necessary software tools.

- **Project Information**. Kickstarter concedes that Blackbaud does not disclose any tools for managing project information. With respect to idealive, the "basic listing" feature was not a web page or a project. *See* JAX21 at KS0002952.

- **Inventory.** Kickstarter's argument that the idealive registration page somehow discloses "computer programs …, including … inventory" is still unexplained. The Court may not infer disclosures that are not directly present in the publications. *See Bettcher Indus., Inc. v. Bunzl USA, Inc.*, 661 F. 3d 629, 639 (Fed. Cir. 2012). Kickstarter admits that Blackbaud has no programs for inventory, but neither do November Project or Marillion. A mere reference to selling CDs online is insufficient to disclose providing remotely operable application programs for managing inventory. JAX46, Monroe Rept. at ¶ 201.

- **Auctions.** Mr. Reid's unsupported testimony regarding a "Dutch Auction" is legally insufficient in the absence of *any corroborating evidence*. *See Checkpoint Sys.*, 412 F.3d at 1339 (Fed. Cir. 2005). With respect to Blackbaud, JAX14 is not "a Blackbaud presentation." It is a presentation by the American Red Cross and *not* about Blackbaud. It cannot be lumped together with Blackbaud.

- **Patrons.** There is no evidence that Blackbaud was ever used to fund a creative project. Thus, the Blackbaud publications do not disclose "Patrons." JAX46, Monroe Rept. at ¶ 315. Furthermore, idealive does not disclose any *computer programs for managing* Patrons, which is what the Court's construction requires.

- **Licensing.** Kickstarter concedes that November Project, Marillion, and Blackbaud do not disclose licensing. idealive shareholders are not licensees, and even if they were, there are no computer programs to manage licenses.

- **Personnel.** Kickstarter has not explained where JAX22, 21, or 29 discloses any computer

programs for managing personnel.  JAX22 is a registration page for an ***individual***.  There are no fields for defining or managing personnel.  *Id.*  The supposition that idealive administrators would accommodate a team of collaborators (not mentioned in JAX22), ***does not*** mean that idealive included any computer programs for managing personnel.  *See Bettcher Indus.*, 661 F.3d, at 639.  There is no evidence that Blackbaud was ever used to fund a creative project. Thus, the Blackbaud publications do not disclose "Personnel."

- **News.**  Kickstarter has not explained how idealive (JAX27) discloses "computer programs" for managing news.  JAX27 was prepared by an idealive site administrator, Hamish Reid, and there is no indication that it was prepared using any computer programs. *See Bettcher Indus.*, 661 F.3d, at 639.  For Blackbaud, Kickstarter has not made any response.

- **Mailings**.  The fact that ***idealive site administrators*** may have collected email addresses is irrelevant.  The fact that ***idealive*** indicated it might send promotional materials "about ***idealive***" is also irrelevant.  The claim requires "providing software tools to ***an artist or Account Manager***," not web site administrators.  There is no evidence suggesting that idealive had any computer programs for managing mailings or that it ***provided*** such tools ***to Artists***.  Indeed, all evidence is to the contrary.  JAX3, Reid Dep. at 67:24-68:13.  Again, Kickstarter has not cited to any computer programs for Blackbaud.  It simply references a Red Cross presentation encouraging people to collect emails and send email messages.

- **Media Shows/Images.**  Kickstarter has not explained how the idealive registration page discloses computer programs for managing media shows and images.  *See* JAX 22.  The fact that registration might allow "access members only MP3s, video clips, and images," does not mean that ***Artists*** were ***provided*** any computer programs to manage media shows or images. *See Bettcher Indus.*, 661 F.3d, at 639.  With regard to Blackbaud, Kickstarter only cites a an Red Cross presentation.  *Id.*  The presentation ***is not*** about Blackbaud.

> iii.  **"application programs operable from a remote site for … receiving information from the artist … regarding at least one Sales Container … including … a product, a service, and a patronage while the artist retains outright ownership…"**

Kickstarter has not cited to any portion of the idealive publications that shows this limitation.  The best Kickstarter can do is identify passing references that artists could have provided a copy of the CD to their investors.  This is not evidence of any remotely operable application programs for ***receiving information regarding*** a sales container.  Kickstarter is making a veiled inherency argument that fails as a matter of law.  *See Bettcher Indus.*, 661 F.3d, at 639.  Mr. Reid admitted that idealive ***never built any tools to implement providing the project in a computerized fashion***.  JAX3, Reid Dep. at 93:9-25.  Regarding Blackbaud, Kickstarter still

does not cite any evidence of any programs for receiving information about sales containers. Mr. Mollick simply references November Project and Marillion in ¶70 of his report. In ¶12 of his declaration, Mr. Connors simply states that non-profits use Blackbaud. JAX75. There is no evidence of any programs relating to sales containers.

The November Project and Marillion publications also do not disclose this limitation. Contrary to Kickstarter's assertions, "[w]hether a website was created manually" has everything to do with the claims of the '887 Patent. One of the inventive concepts of the '887 Patent was providing Artists with the software tools they would need to configure and launch their own project (including a web page). The fact that the Marillion and November Project web pages were both prepared and managed **manually** is a significant distinction. *See* JAX46, Monroe Rept. at ¶¶ 198-260. November Project did not use any remotely operable application programs, much less **provide them** to other artists. *Id*. Furthermore, the fact that Marillion used a web page design program does not change the fact that Marillion prepared its web pages manually. *Id*. at ¶200. As such, Kickstarter has failed to produce clear and convincing evidence that any of its prior art discloses this limitation and ArtistShare is entitled to judgment as a matter of law.

### iv.   "application programs operable from a remote site for … providing … software tools to manage communications, through said Patron database…"

Kickstarter's entire theory with respect to this limitation is based on a complete disregard for the Court's Claim Construction Order. The Court construed this limitation as "computer programs that enable and control the exchange of information with a patron **wherein the patron receives the information directly from the Patron database**." D.I. 53 at 13. The words "**directly from**," implies no intervening steps. Kickstarter has failed to produce any evidence that the prior art taught using a patron database in this fashion.

Neither the idealive publications nor the Blackbaud publications disclose this limitation.

23

With respect to idealive, ArtistShare's expert testified that idealive presumably collected emails addresses at the registration stage so that *idealive* could send emails.  JAX2, Monroe Dep. 210:9-212:7.  He *never* testified that idealive disclosed *providing to artists* any tools for managing communications directly through a patron database.   Again, Mr. Reid testified that such a capability was *never built by idealive*.  JAX3, Reid Dep. at 67:24-68:13.  If artists wanted to contact their shareholders they could not do so without the aid of idealive site administrators.  *Id*.

With regard to Blackbaud, the "RE:NetMail" and "RE:Members" features both required the *intermediate step* of exporting information from the offline donor database.  *See* JAX46, Monroe Rept. at ¶301.  Thus, the Blackbaud publications fail to disclose this limitation as well. As such, ArtistShare is entitled to summary judgment of non-obviousness as a matter of law.

### c.  Kickstarter Has Failed to Come Forward With Any Evidence of Obviousness Relating to the Dependent Claims

ArtistShare is entitled to summary judgment of validity at least with respect to all of the dependent claims of the '887 Patent because Kickstarter has not come forward with any evidence addressing those claims.  Because Kickstarter never bothered to present evidence with respect to these separate claims they are valid as a matter of law.  *See* 35 U.S.C. § 282(a). ArtistShare has *never* stipulated that the dependent claims of the '887 Patent should stand or fall with the independent claims.  The fact that ArtistShare's validity contentions focused on the validity of the independent claims (which is all that is required to demonstrate *validity* of all claims) does not change Kickstarter's *burden* to produce clear and convincing evidence of invalidity with respect to each claim separately.  Because Kickstarter has not even attempted to meet its burden with respect to the dependent claims, they are valid as a matter of law.

### d.  Kickstarter Failed to Address Secondary Considerations that the Claims of the '887 Patent Are Non-Obvious

Finally, ArtistShare produced substantial evidence relating to secondary factors during

discovery.  For example, ArtistShare's Expert, Marshall Monroe, dedicated an entire section of his expert report to the various secondary considerations of non-obviousness relating to the '887 Patent.  *See* JAX46, at ¶536-544.  Kickstarter is well aware of the secondary considerations at issue in this case and those secondary factors "must be considered in determining obviousness." *TriMed, Inc. v. Stryker Corp.*, 608 F. 3d 1333, 1343 (Fed. Cir. 2010).  Kickstarter's failure to address these secondary factors renders its motion for summary judgment incomplete and entitles ArtistShare to summary judgment of non-obviousness. In addition, Kickstarter created a new secondary factor by trying to purchase the '887 Patent from Thompson, which cannot be ignored.

### D.  CLAIMS 4, 6, AND 10 ARE DEFINITE

Kickstarter offers nothing to suggest that the term "interested party" is at all unclear. First, ArtistShare's expert ***never*** said that the interested party might be either a Fan or a Patron. Mr. Monroe merely acknowledged that the interested party is obviously a Fan ***who has become a Patron*** by contributing funds for a project.  *See* Monroe Rept. at ¶546.  Mr. Monroe's testimony is consistent with the Court's Claim Construction Order.  *See* Claim Construction Order, D.I. 53 at 7 ("***patron***" is construed as "***a fan*** who register*s* with an artist and who provides a contribution to a project of an artist in exchange for certain entitlements.").

Kickstarter next posits that the claims might be unclear if a Patron bought their friend a CD using the system, but the claims do not embrace the concept of a "friend."  In any event, the Patron who ***purchased the CD***, would obviously be the interested Party. The Supreme Court requires "reasonable certainty" under 35 U.S.C. § 112, not require perfect clairvoyance with respect to every conceivable scenario.  One of ordinary skill in the art would have no trouble understanding that the "interested party" of claims 4, 6, and 10 is the Patron of claim 1.  Thus ArtistShare is entitled to summary judgment of definiteness as a matter of law.

Respectfully submitted,

ARTISTSHARE, INC AND FAN
FUNDED, LLC

By its attorneys,

Date: September 10, 2014             By:     /s/ Craig R. Smith
                                             Craig R. Smith (CS-0205)
                                             William J. Seymour (WS-1801)
                                             Eric P. Carnevale (EC-5533)
                                             LANDO & ANASTASI, LLP
                                             Riverfront Office Park
                                             One Main Street – 11th Floor
                                             Cambridge, MA 02142
                                             Telephone (617) 395-7000
                                             Facsimile: (617)-395-7070
                                             csmith@lalaw.com

                                             Theodore K. Cheng (TC-8414)
                                             FOX HORAN & CAMERINI LLP
                                             825 THIRD AVENUE
                                             NEW YORK, NY 10022
                                             (212) 480-4800
                                             (917) 459-3669 (CELL)
                                             (212) 269-2383 (FAX)
                                             TCHENG@FOXLEX.COM

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served on counsel of record by ECF on this 10th day of September, 2014.


/s/ William J. Seymour
William J. Seymour